**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BROADCAST MUSIC, INC., et al., | ) Case No.: 1:12-cv-01903 - JLT |
|          Plaintiffs, | ) ORDER GRANTING PLAINTIFF'S MOTION |
|       v. | ) FOR SUMMARY JUDGMENT |
| ANGELA MARIE CRAWFORD, individually and d/b/a McMURPHY'S IRISH PUB, | ) (Doc. 35) |
|          Defendant. | ) |

Plaintiff Broadcast Music, Inc seeks summary judgment against Angela Marie Crawford, individually and doing business as McMurphy's Irish Pub ("Defendant"). (Doc. 35.) Defendant filed her opposition to the motion on February 21, 2014 (Doc. 37), to which BMI filed a reply on February 27, 2014 (Doc. 45). For the following reasons, BMI's motion for summary judgment is **GRANTED**.

**I.      Factual and Procedural History**

BMI; Stone Diamond Music Corp.; Sony/ATV Songs LLC, doing business as Sony ATV Tree Publishing; EMI Virgin Songs, Inc.; MJ Twelve Music; Welsh Witch Music; Moebetoblem Music; and E.O. Smith Music initiated this action by filing a complaint on November 19, 2012. (Doc. 1.) BMI "is a 'performing rights society' which licenses the right to publicly perform copyrighted musical compositions works on behalf of the copyright owners of these works." (Doc. 35 at 9); *see also* 17 U.S.C. § 101 (defining "performing rights society" as "an association, corporation, or other entity that licenses the public performance of nondramatic musical works on behalf of copyright owners of such

works, such as the American Society of Composers, Authors and Publishers (ASCAP), Broadcast Music, Inc. (BMI), and SESAC, Inc."). The non-BMI plaintiffs alleged that they are owners of the copyrights for the songs "Ain't Too Proud to Beg," "Crazy," "Everlong," "Landslide," "Breaking the Girl," and "Keep Fishin,'" and that these songs were publicly performed "without a license or permission to do" so at McMurphy's Irish Pub. (Doc. 1 at 3, 5; Doc. 1-1 at 1-3.)

BMI's Licensing Assistant Vice President, Lawrence Stevens, reports that "BMI routinely sends to the proprietors of establishments where music is publicly performed license agreements and information explaining the need to obtain permission from copyright owners in order to lawfully publicly perform copyrighted music in their establishment." (Doc. 35-13, Stevens Decl. ¶ 2.) He reports that BMI learned musical entertainment was offered at McMurphy's Irish Pub, and "[o]n November 4, 2011, BMI sent a letter to the establishment and advised that a license was required." (*Id.*, ¶ 3.) A brochure and BMI license agreement were enclosed with the letter. (*Id.*) It is undisputed that Ms. Crawford did not respond to this letter, and "[b]etween November 2011 and September 2012, BMI repeatedly offered to license the public performance of musical compositions at McMurphy's Irish Pub and notified Defendant[] repeatedly by letters and telephone calls that the performance of musical compositions in which BMI owns the public performance rights, without a license, infringed BMI's rights under the Copyright laws." (UMF 14; Stevens Decl. ¶¶ 5-6.) Defendant does not dispute that the letters or phone calls were made, but asserts she did not become the owner of the pub until March 2012. (Doc. 40 at 2, Crawford Decl. ¶ 2.)

After Defendant failed to enter a license agreement with BMI, the company dispatched an investigator, Stanley Joseph, "to visit McMurphy's Irish Pub and make an audio recording and written report of the music being publicly performed" on May 26, 2013 and July 7, 2013. (UMF 17; Stevens Decl. ¶¶ 9-10.) The audio recordings were submitted to BMI employees "to review the recordings to identify any additional recorded musical works as well as to identify additional live performances." (Stevens Decl., ¶¶ 11-12.) The BMI employees identified performances of "Breaking the Girl," "Ain't Too Proud To Beg," "Everlong," "Keep Fishin'," and "Landslide." (*Id.*) Mr. Joseph's recording was submitted for digital review, which confirmed performances of "Everlong" and "Crazy." (*Id.* at ¶ 13.)

2

According to BMI, "The other plaintiffs − Stone Diamond Music Corp., Sony/ATV Songs LLC d/b/a Sony ATV Tree Publishing, EMI Virgin Songs, Inc., MJ Twelve Music, Welsh Witch Music, Moebetoblem Music, and E.O. Smith Music − are the copyright owners" of the songs "Ain't Too Proud to Beg," "Crazy," "Everlong," "Landslide," "Keep Fishin'" and "Breaking the Girl," which were played at McMurphy's Irish Pub without a license.  (Doc. 35 at 9-10.)

## II.   Legal Standards for Summary Judgment

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Matsuhita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Accordingly, summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact.  *Celotex,* 477 U.S. at 323.  An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).  A moving party demonstrates summary judgment is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323 (quoting Fed.R.Civ.P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that demonstrate there is a genuine issue of a material fact.  Fed R. Civ. P. 56(e); *Matsuhita*, 475 U.S. at 586.  An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Id.* at 587.  The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention

1   that a factual dispute exits.  *Id.* at 586, n.11; Fed. R. Civ. P. 56(c).  Further, the opposing party is not

2   required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed

3   factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth

4   at trial."  *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir.

5   1987).  However, "failure of proof concerning an essential element of the … case necessarily renders

6   all other facts immaterial."  *Celotex*, 477 U.S. at 322.

7        The Court must apply standards consistent with Rule 56 to determine whether the moving party

8   demonstrated there is no genuine issue of material fact and judgment is appropriate as a matter of law.

9   *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993).  In resolving a motion for summary

10  judgment, the Court can only consider admissible evidence.  *Orr v. Bank of America, NT & SA*, 285

11  F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P. 56(e); *Beyene v. Coleman Sec. Servs., Inc.*, 854

12  F.2d 1179, 1181 (9th Cir. 1988)).  Further, evidence must be viewed "in the light most favorable to the

13  nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr*,

14  285 F.3d at 772; *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

15  **III.    Evidentiary Objections**

16       Defendant objects to the evidence identified as "Exhibit B," attached to the declaration of Hope

17  Lloyd.  (Doc. 44 at 1.)  According to Defendant, the evidence contained in Exhibit B should not be

18  considered because it has not been properly authenticated as required by Rules 901 and 902 of the

19  Federal Rules of Evidence.  (*Id.*)

20       Authentication of documents "'is a condition precedent to admissibility,' and this condition is

21  'satisfied by evidence sufficient to support a finding that the matter in question its proponent claims.'

22  *Orr*, 285 F.3d at 773 (quoting Fed. R. Evid. 901(a)).  The Ninth Circuit has "repeatedly held that

23  unauthenticated documents cannot be considered on a motion for summary judgment." *Id.* (citing, *e.g.*,

24  *Cristobal v. Siegel*, 26 F.3d 1488, 1494 (9th Cir. 1994); *Hal Roach Studios v. Richard Feiner & Co.*,

25  896 F.2d 1542, 1550-51 (9th Cir. 1990); *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th

26  Cir. 1987)).  Documents that are authenticated through personal knowledge must be attached to a

27  declaration that satisfies the requirements of Rule 56(e), and the declarant must be one through whom

28  the exhibits could be admitted into evidence.  *Id.* at 773-74 (citing *Canada*, 831 F.2d at 925).

Here, Ms. Lloyd reports she been the Assistant Vice President, Legal of Broadcast Music, Inc. since 2012. (Doc. 35-8 at 2, Lloyd Decl. ¶ 1.)  She asserts that BMI enters "agreements with copyright owners such as music publishing companies and composers," through which the company "acquires non-exclusive public performance rights."  (*Id.*, ¶ 2.) According to Ms. Lloyd, "The affiliation agreements are made in the ordinary course of business by persons who have a duty to BMI to accurately make and maintain such agreement," and "[t]he records are made at or near the time of the occurrence of the events which they reflect."  (*Id.*)  Ms. Lloyd asserts, under penalty of perjury, that Exhibit B to her declaration contains "[t]rue and correct copies of the certificates and subsequent documentation relating to the chain of ownership of the musical compositions and the affiliations with BMI."  (*Id.* at 3, ¶ 4.)  Specifically, Ms. Lloyd reports Exhibit B includes "true and correct copies of official Copyright Office records and copies of documentation made and kept in the ordinary course of Plaintiffs' business."  (*Id.*)

These statements are sufficient to demonstrate Ms. Lloyd has personal knowledge of the documents and that she is capable of authenticating them.  Accordingly, Defendant's objection to the evidence identified as "Exhibit B" to the declaration of Ms. Lloyd is **OVERRULED**.

## IV.    Discussion and Analysis

BMI asserts Defendant is liable for a violation of the Copyright Act, which gives the owner of a copyright the exclusive right to publicly perform, or authorize others to perform, a copyrighted musical work.  *See* 17 U.S.C. § 106(4).  Anyone who violates the exclusive right of the copyright owner is an infringer, and [t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right."  17 U.S.C. § 501(a)-(b). An individual may also be a "vicarious infringer" if he or she "profits from direct infringement while declining to exercise a right to stop or limit it."  *Range Road Music, Inc. v. East Coast Foods, Inc.*, 668 F.3d 1148, 1143 (9th Cir. 2012) (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)).  The Supreme Court explained: "An orchestra or individual instrumentalist or singer who performs a copyrighted musical composition in such a public place without a license is . . . clearly an infringer under the [Copyright Act].  The entrepreneur who sponsors such a public performance for profit is also an infringer—direct or contributory."  *Twentieth Century Music Corp. v. Aiken*, 422 U.S.

151, 157 (1975).

### A.    Copyright Infringement

To demonstrate a copyright infringement, "a plaintiff must demonstrate (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Range Road Music*, 668 F.3d at 1153 (internal quotation marks, citation omitted).[1]  Thus, "to establish a prima facie case of copyright infringement, plaintiffs must prove five elements: (1) the originality and authorship of the compositions involved; (2) compliance with the formalities required to secure a copyright; (3) plaintiffs' ownership of the copyrights of the relevant compositions; (4) defendant's public performance of the compositions; and (5) defendant's failure to obtain permission from the plaintiffs or their representatives for such performance." *Durney v. Wavecrest Labs., LLC*, 441 F.Supp.2d 1055, 1061 (N.D. Cal. 2005) (citing *Bourne Co. v. Speaks*, 670 F.Supp. 777, 778 (E.D. Tenn. 1987)).

### 1.    Originality, Registration, and Ownership

In this case, BMI asserts it is the copyright owner of the following songs:  "Ain't Too Proud to Beg," "Crazy," "Everlong," "Landslide," "Keep Fishin'" and "Breaking the Girl."  (Doc. 35 at 10.)  To establish this as fact, Hope Lloyd, Assistant Vice President, Legal of BMI, provided true and correct copies of the copyright registration certificates for each of the songs.  (Doc. 35-10, 35-11, 35-12; Lloyd Decl., Exh B).  The Copyright Office issued registration certificates for each of the songs identified in the complaint.  (*See* Doc. 35-10 at 2-3, 18; Doc. 35-11 at 2-5, 29-32; Doc. 35-2 at 6-9, 20-22.)  Significantly, the issuance of a certificate of registration "shall constitute prima facie evidence of the validity of the copyright and the facts stated in the certificate."  17 U.S.C. § 410; *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488-89 (9th Cir. 2000) ("[r]egistration is prima facie evidence of the validity of a copyright").  "This presumption can be rebutted by the defendant's showing that the plaintiff's work is not original."  *Three Boys Music Corp.*, 212 F.3d at 489 (citing *North Coast Indus. v. Jason Maxwell, Inc.*, 972 F.2d 1031, 1033 (9th Cir. 1992)).  Here, Defendant does not dispute the originality of the songs in issue, and the certificates demonstrate the compliance with registration

---

[1] The Ninth Circuit explained: "'The word 'copying' is shorthand for the infringing of any of the copyright owner's six exclusive rights,' one of which is the right 'to perform the copyrighted work publicly.'" *Id.* at 1153-54 (quoting *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 n.3 (9th Cir. 1989); *see also* 17 U.S.C. § 106(4) (reserving the right of copyright owners for musical works "to perform the copyrighted work publicly").

formalities and ownership of the copyrights.

### 2.    Public Performance of the Compositions

BMI sent investigator Stanley Joseph "to visit McMurphy's Irish Pub and make an audio recording and written report of the music being publicly performed" on May 26, 2012 and July 7, 2012. (UMF 16-17; Stevens Decl. ¶¶ 9-10.)  On May 26, 2012, Mr. Joseph estimated there were 20 patrons in McMurphy's Irish Pub, and that it had a capacity of 130 people.  (Doc. 35-14 at 16.)  On July 7, 2012, Mr. Joseph estimated there were 35 patrons present.  (*Id.* at 2.)  While there, Mr. Joseph noted that jukebox selections were occasionally played but this occurred "all before start time of Karaoke." (*Id.*)  Mr. Joseph identified the song "Crazy" as being performed at 11:26 p.m on July 7, 2012.  (*Id.* at 3.)  In addition, Mr. Joseph "made [a] digital recording" at each visit to the pub, and then "sent the original SD Card containing the recording to BMI's General Licensing Department."  (*Id.* at 6, 20.)

The audio recordings were submitted to BMI employees "to review the recordings to identify any additional recorded musical works as well as to identify additional live performances."  (Stevens Decl., ¶¶ 11-12.)  Johanna Carr, a BMI employee, reviewed the audio recording from May 26, 2012, and identified the song "Breaking the Girl."  (Doc. 35-14 at 22-24.)  In addition, Lisa Brammer, BMI's Associate Director of Performance Identification, used digital audio recognition technology to review the July recording from Mr. Joseph.  (Doc. 35-14 at 7.)  With this method, BMI identified other songs in its repertoire, including "Ain't Too Proud to Beg," "Everlong," "Landslide," and "Keep Fishin'" (*Id.* at 11, 14-15.)  The statements of Stanley Joseph, Johanna Carr, and Lisa Brammer are each signed under penalty of perjury and establish the public performance of the songs.  *See Broadcast Music, Inc. v. 84-88 Broadway, Inc.,* 942 F. Supp. 225, 229 (D. N.J. 1996) ("investigators' affidavits can constitute sufficient proof of live performance"); *Hickory Grove Music v. Andrews*, 749 F. Supp. 1031, 1036 ("[p]ublic performance of copyrighted material may be proven by uncontradicted affidavits of [company] investigators").

Defendant does not dispute that the songs were played at McMurphy's Irish Pub, but asserts "a reasonable inference may be drawn that "Everlong," "Keep Fishin'," "Breaking the Girl," "Landslide," and "Ain't Too Proud to Beg" were played by jukebox." (Doc. 37 at 4, emphasis omitted.)  According to Defendant, playing songs through the jukebox does not constitute a live performance, and "there can

be no infringement because the jukebox is licensed through the Jukebox Licensing Organization.  (*Id.*)

Significantly, however, "[t]o 'perform' a work means to recite, render, play, dance, or act it, either directly or by means of any device or process."  17 U.S.C. § 101.  In addition, to perform a work "publicly" means:

> (1) to perform or display it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered; or
>
> (2) to transmit or otherwise communicate a performance or display of the work to a place specified by clause (1) or to the public, by means of *any device* or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times.

17 U.S.C. § 101 (emphasis added).  Because the "performance" of the songs took place in a pub open to the public, it is a public performance for purposes of copyright law—whether the songs were played via jukebox.[2]  As such, BMI has established public performance of the compositions in issue at Murphy's Irish Pub.

### 3.    Failure to Obtain Permission for the Performances

In addition to the public performance, BMI must establish Defendant failed to obtain permission for the performances of "Ain't Too Proud to Beg," "Crazy," "Everlong," "Landslide," "Keep Fishin'" and "Breaking the Girl."  *See Durney v*, 441 F.Supp.2d at 1061.  Defendant does not dispute that she did not obtain a license from BMI for McMurphy's Irish Pub.  (Doc. 38 at 9, UMF 21.)

### B.    Damages

Having established that there are no genuine issues of material facts and Defendant is liable for copyright violations, the Court must determine the amount of damages.  Pursuant to the Copyright Act, a plaintiff may recover: (1) actual damages and any additional profits of the infringer, or (2) statutory damages amounting to a minimum of $750 and maximum of $30,000 per copyright infringement, as the Court considers just.  17 U.S.C. § 504(a), (c)(1).  If the infringement is willful, the Court "may increase the award of statutory damages to an award of not more than $150,000."  *Id*. § 504(c)(2).  Here, BMI asserts the infringement was willful, and requests damages in the amount of $18,000, which represents

---

[2] Notably, Defendant does not produce any evidence to rebut Mr. Joseph's sworn statement that the jukebox selections were played prior to the start of karaoke.

an award of $3,000 for each of the six infringements.  (Doc. 35 at 20.)

### 1.   Willfulness of copyright infringement

A defendant willfully infringes on the copyright of another by acting "with knowledge that the defendant's conduct constitutes copyright infringement."  *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 n.3 (9th Cir. 1990) (citation omitted).  Here, BMI has established that Defendant knew she lacked authorization to play music in BMI's repertoire at Murphy's Irish Pub.  It is undisputed that "[a] BMI representative telephoned McMurphy's Irish Pub on twenty two (22) occasions, and on a number of those occasions, spoke to persons associated with the establishment's operation, including four (4) phone calls with Crawford."  (UMF 21, Doc. 35-1 at 6 and Doc. 38 at 8-9.)  Thus, the evidence establishes that the infringements were willful.

### 2.   Statutory damages

BMI seeks statutory damages for each song played without the license.  "Statutory damages are available in order to effectuate two purposes underlying the remedial provisions of the Copyright Act: to provide adequate compensation to the copyright holder and to deter infringement."  *Frank Music Corp. v Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1554 (9th Cir. 1989), *cert. denied*, 494 U.S. 1017 (1990). Thus an award of statutory damages should "not merely compel[ ] restitution of profit and reparation for injury but also ... discourage wrongful conduct."  *F. W. Woolworth Co. v. Contemporary Arts*, 344 U.S. 228, 233 (1952).  The Court has "wide discretion" in awarding statutory damages for a violation of the Copyright Act.  *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984). The Supreme Court explained factors include: "the nature of the copyright [and] the circumstances of the infringement."  *F. W. Woolworth Co.* at 233.

Notably, BMI's grievance is based upon Defendant's failure to obtain a "blanket license agreement," which encompasses "approximately 7.5 million musical works."  (Doc. 35 at 10, 17.) According to Mr. Stevens, "Had Defendant entered into an agreement at the time BMI first contacted her in July 2011, the estimated license fees between July 2011 and June 2012 would have been approximately $1,730.  The estimated license fees between July 2012 and June 2013 would have been approximately $1,750.  The current annual license fee would be approximately $1,810." (Doc. 35-13 at 5, Stevens Decl. ¶ 17.)  On the other hand, BMI's investigator estimated the maximum occupancy

9

permitted was 130 though correspondence to McMurphy's which set forth the licensing fee, assumed a maximum capacity of 200.  (Doc. 35-15 at 19, 21; Doc. 39-2 at 2)

BMI demonstrates extensive attempts to gain compliance by the bar.  It telephoned the bar 22 times to attempt to provide it licensing, sent numerous letters and sent two letters to "cease and desist.  (UMF 21, Doc. 35-1 at 6 and Doc. 38 at 8-9.)  BMI spoke to Ms. Crawford four times and on the last occasion, she told BMI personnel to "sue her and stop calling."  Id. Also, BMI sent letters attempting to gain compliance with the licensing requirement many which were sent even after their investigator visited the site which found copyright infringements occurring.  (Doc. 35-15 at 15-21)

Notably, Defendant has produced evidence that though she was employed as the manager at McMurphy's Irish Pub when BMI first made contact, she did not become the owner of the establishment until March 2012.  (Doc. 40 at 1, Crawford Decl. ¶¶ 2-3.)  Likewise, Defendant argues the amount of the licensing fee is wrong given BMI used a maximum occupancy figure that was four times greater than actual.  (Doc. 37 at 7.)  Indeed, in response to special interrogatory 17—attached to Plaintiff's motion—Defendant reported the maximum capacity of the bar is 49.  (Doc. 35-6 at 5)  However, though this response is verified, the verification fails to demonstrate that Ms. Crawford knows this figure of her own personal knowledge.  Instead, she asserted, "The matters stated in the foregoing are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters, I believe them to be true."  (Doc. 39-4 at 6)  This is insufficient.

Several courts have calculated statutory damages by tripling the amount of unpaid licensing, or that an amount approximately three times the licensing fee is appropriate.  *See, e.g., Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224, 1229-30 (7th Cir. 1991) (affirming an award "equal to approximately three times the amount due under past license agreements"); *Dream Dealers Music v. Parker*, 924 F. Supp. 1146, 1153 (S.D. Ga. 1994) (finding "an amount just less than three times what [the defendant] would have paid… to be modest, just, and appropriate" under 17 U.S.C. § 504).  In *Odnil Music, Ltd. V. Katharsis LLC*, 2006 U.S. Dist. LEXIS 65813 at *8 (E.D. Cal. July 21, 2006), despite recognizing that "the courts routinely award as statutory damages… amounts that are between two and three times license fees," the court awarded $3,000 per song due to the willful and egregious conduct of the defendant.  Similarly, in *Broadcast Music Inc. v. Antigua Cantina & Grill,* LLC, 2:12-

10

CV-1196 KJM DAD, 2013 WL 460329 at *4 (E.D. Cal. Feb. 5, 2013), the court awarded the $3,000 per song requested and found this was reasonable because twice the licensing fee would have been about the same amount.  However, in *Broadcast Music, Inc. v. Colonial Foods, Inc.*, 1993 WL 87808 at *3-4 (N.D. Cal. Mar. 17, 1993), the court awarded $2,000 per song played without regard for the licensing fee which would have applied.

However, in considering the authorities and weighing the evidence, the Court finds an award of $8,080—three times the amount of the unpaid licensing fees for the portion of 2012 Ms. Crawford owned the bar to date—to be appropriate.[3]

### 3.    Injunction

Copyright law authorizes injunctive relief for copyright infringement.  *Elektra Ent. Group, Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) (citing 17 U.S.C. § 501, 502(a)).  A temporary or permanent injunction may be ordered "to prevent or restrain infringement of a copyright."  17 U.S.C. § 502.  In general, "a permanent injunction will be granted when liability has been established and there is a threat of continuing violations."  *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993); *Sega Enterprises Ltd. v. Maphia*, 948 F. Supp. 923, 940 (N.D. Cal. 1996) ("a showing of copyright infringement liability and the threat of future violations is sufficient to warrant a permanent injunction").

As discussed above, BMI has established Defendant's liability for copyright infringement, and that the violations were despite Defendant's knowledge that she lacked authorization to play music in BMI's repertoire at McMurphy's Irish Pub.  Further, Defendant has yet to obtain a BMI license. (UMF 21, Doc. 38 at 9.)  Accordingly, the requested injunctive relief is appropriate to prevent future copyright infringement.

---

[3] However, the Court reduces the license amount by 35% to make it consistent with BMI's investigator's observation that the bar's maximum occupancy was 130 (Doc. 35-14 at 2), not 200.  Though Mr. Stevens provides figures as to his calculation of the licensing fees, it is clear that he basis the figures on a maximum occupancy of 200 despite that there is no evidence to support this figure. *Compare* Doc. 35-13 at 5 with Doc. 39-2 at 2.  Indeed, when BMI was attempting to gain Defendant's compliance, it calculated the maximum occupancy as 200 but noted, "Bear in mind when an official occupancy is obtained, or if you can provide us with the proper occupancy documentation now, the fees below will be adjusted to reflect any discrepancy that might occur."  (Doc. 35-15 at 19, 21)  Thus, the Court cannot accept the 200 occupancy figure as there is no evidentiary support for it.

The award made here totals $1,346 per song, which exceeds the statutory minimum per infringement and includes an appropriate increase for the willfulness of Defendant's actions.

C.      **Attorneys' Fees and Costs**

The Court has the discretion to "allow the recovery of full costs and reasonable attorney fees" to a prevailing plaintiff.  17 U.S.C. § 505.  Here, BMI seeks litigation costs in the amount of $561.90, which includes the filing fee of $350.00 and $211.90 for service.  (Doc. 35 at 22, Doc. 35-2 at 4, Mori Decl. ¶ 11.)  These requested costs are reasonable.

Because counsel has not billed on an hourly basis, she provides only that she was retained on a flat rate basis and has been paid $11,000.  *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc*., 886 F.2d 1545, 1556 (9th Cir.1989) ("Plaintiffs in copyright actions may be awarded attorney's fees simply by virtue of prevailing in the action: no other precondition need be met, although the fee awarded must be reasonable.")  Though counsel fails to detail the number of hours worked for this amount, it is clear that significant written discovery has occurred, a motion for summary judgment was prepared and the complaint was drafted.  At an hourly rate of $300, less than 37 hours would be compensated.  At $250 per hour, only 44 hours is compensated.  Thus, the Court finds this amount to be reasonable. *See Broadcast Music, Inc. v. Paden*, 2011 WL 6217414, at *5 (N.D.Cal. Dec.14, 2011) (finding $11,399 to be reasonable amount of attorneys' fees on motion for default judgment); *Shakey's USA, Inc. v. Tutto's Pizza Corp.,* 2009 WL 3211027, at *6 (E.D.Cal.2009) (recommending a fee award of $23,775.37 on a motion for default judgment); *Broadcast Music, Inc. v. Colonial Foods, Inc.*, 1993 WL 87808, at *3 (N.D.Cal. Mar.17, 1993) (awarding $3,169 in attorneys' fees on motion for default judgment). Accordingly, the court will grant the fee award in the amount of $11,000 and costs in the amount of $561.90.

**V.      Conclusion and Order**

BMI has carried its burden to demonstrating the absence of a genuine issue of material fact, and established Defendant is liable for copyright infringement for the public performance of the songs "Ain't Too Proud to Beg," "Crazy," "Everlong," "Landslide," "Keep Fishin'" and "Breaking the Girl," at McMurphy's Irish Pub.

Based upon the foregoing, Accordingly, **IT IS HEREBY ORDERED:**

1.      BMI's motion for summary judgment (Doc. 35) is **GRANTED**;

2.      BMI is awarded $8,080 in statutory damages;

3.      Defendant, Angela Crawford is **ENJOINED** from further infringement of BMI's copyrights;

4.      BMI's request for costs in the amount of $561.90 is **GRANTED**;

5.      BMI's request for attorneys fees in the amount of $11,000 is **GRANTED.**

IT IS SO ORDERED.

Dated:   **March 28, 2014**                            **/s/ Jennifer L. Thurston**
                                                  UNITED STATES MAGISTRATE JUDGE

13